Franklin and Marshall College *v.* the Zoning Hearing Board of the City of Lancaster. Dorothy J. Korn, Richard W. Bomberger, Catherine S. Bomberger and the City of Lancaster, Appellants.

Argued March 10, 1977, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*Lawrence J. Keeting,* with him *James F. Heinly,* and *Morgan, Hallgren & Heinly,* for appellants.

*John Paul Kershner,* with him *W. Jeffrey Side-bottom,* and *Barley, Snyder, Cooper & Barber,* for appellee.

OPINION BY JUDGE WILKINSON, JR., March 31, 1977:

Franklin and Marshall College (F & M) applied on January 13, 1976, for zoning approval and a building permit to convert a single-family dwelling it owns at 611 College Avenue, Lancaster, into a boarding house to accommodate 15-19 students. The property for which F & M seeks a special exception under Article 5 of the Lancaster Zoning Ordinance (Ordinance) is located in a CA (Conversion-Apartment) District. Conversion plans include the construction of an addition to the existing structure. Upon completion,

F & M plans to lease the house to the Zeta Beta Tau Fraternity. Of the 11 dwellings on the block, 2 are already fraternities. On February 2, 1976, a hearing was held before the Zoning Hearing Board of the City of Lancaster (Board) and on March 2 the Board rejected the application for a special exception on the basis that another fraternity was "not compatible with adjacent and other properties in the district." An appeal was filed with the Court of Common Pleas of Lancaster County and a hearing held on June 7, 1976. On June 11 the lower court ruled that there was no substantial evidence that F & M's plans would substantially affect the health, safety and welfare of the community and ordered the Board to grant the special exception. The Board then filed this appeal.

Three major issues have formed on appeal: Did F & M comply with the Ordinance's minimum off-street parking requirements; did F & M comply with the Ordinance's side yard requirements; and, is there substantial evidence to support the Board's finding that the proposed use would be detrimental to the welfare of the neighborhood?[1]

---

[1] We note that on June 6, 1976, over 3 months after denying a special exception, the Board issued an "Opinion of the Board" in support of the decision of March 2, 1976, "to comply with the requirement of §908(9) of the Pennsylvania Municipalities Planning Code (MPC)." Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §10908(9). In the "Opinion" the Board, for the first time, held that F & M's plan failed to meet side yard and parking requirements. Because the record of the case was filed with the lower court by June 3, 1976, 3 days before the "Opinion of the Board" was issued, the side yard and parking issues were never before the lower court. It is, therefore, unconscionable to argue, as appellant does, that the lower court's opinion is fatally flawed for failing to address those issues. Rather, it is more likely that the Board's "Opinion" is fatally flawed. We need not address the issue of whether the Board has violated the MPC, however, since the Board's parking contention is without merit and F & M has agreed to build the

The parking requirements necessary for the issuance of the special exception are found in Article 8 of the Ordinance. The Board denied F & M a special exception finding that: ''Although the minimum off-street parking space required by §078.4 are [sic] provided the spaces are not functional as presently arranged. Accordingly, in effect, parking hasn't been provided for.'' In so ruling, the Board relied upon the testimony of the city traffic engineer that ''there may be some operational factors with getting the vehicles out of the parking lot.'' The witness testified on cross-examination, however, that the zoning requirements were satisfied by the proposed parking facility. No testimony was offered that the plan violated any specific requirement of the Ordinance. The denial, therefore, cannot stand.

Before a special exception is granted, Article 6 of the Ordinance requires that alterations to converted single-family dwellings have a 5 foot side yard. The north wall of the present structure for which F & M seeks a special exception is located 3 feet from the property line. F & M sought a variance to allow the new wing of the building to extend along the same line as the present structure, 3 rather than 5 feet from the property line. The Board ruled that a variance was not proper, which adjudication F & M does not appeal.

F & M now contends that the 5 foot side yard requirement is inapplicable to this type of structure. F & M points out that the explanatory footnote[2] to the

---

addition in compliance with the Ordinance's 5 foot side yard requirement, if we rule that the requirement is applicable here.

[2] It reads:

A five-foot side yard is required at the end of each row or block of single-family attached dwellings and those portions of single-family attached dwellings which do not extend from side lot line to side lot line are required to main-

5 foot requirement deals only with attached houses and argues that the requirement does not apply to non-attached dwellings. We cannot agree. While the footnote excepts attached houses from the full force of the side yard requirement it can hardly be argued that the exception repeals the general rule.[3] F & M will; therefore, have to amend its plan before a special exception is granted.

The third issue is whether there is substantial evidence to support the Board's finding that the proposed fraternity would be detrimental to the welfare of the neighborhood. Where the City and protesting neighbors seek to prevent the granting of a special exception, when the zoning requirements have been met, they have the burden of proving that the "requested use in its normal operation would be injurious to the public health, safety and welfare." *Zoning Hearing Board v. Konyk*, 5 Pa. Commonwealth Ct. 466, 470-71, 290 A.2d 715, 718 (1972).[4] At the public hearing neighbors expressed their opinions and fears that a fra-

tain one five-foot side yard. A row or block of single-family attached dwellings is limited to ten units after which each row or block is required to provide said five-foot side yard, or a total of ten feet.

[3] The Board argues that the original structure is also subject to the 5 foot requirement and must be modified if a special exception is granted. We believe, however, that the original structure falls within the Ordinance's provision entitled "Conversion without alteration of structure to other permitted use" for which there are no side yard requirements. A contrary interpretation would lead to an absurd result that we will not attribute to the legislative body of the City of Lancaster.

[4] The "general compatibility" requirement of Section 122.5 of the Ordinance is satisfied by the fact that fraternities are a permitted use in the zoning district. "The Legislature in providing for special exceptions in zoning ordinances has determined that the impact of such a use of property does not, of itself, adversely affect the public interest to any material extent. . . ." *Zoning Hearing Board v. Konyk, supra*, at 470, 290 A.2d at 718.

ternity house would create greater parking problems and noise than would a single-family dwelling. We do not doubt that it will. Such a use of land naturally leads to greater noise and parking problems. This fact, however, was known to the legislative body of the City of Lancaster when it made fraternities a permitted use within the zoning district. That being so, the protesting neighbors had to show that the impact of the proposed fraternity house on the public interest would be "greater than that normally to be expected from such uses." *Citizens For a Clean Environment v. The Zoning Hearing Board of Hanover Township*, 23 Pa. Commonwealth Ct. 12, 17, 350 A.2d 419, 422 (1976). It is here that the protestants failed, for they produced no evidence of harm "greater than that normally to be expected." We agree with the statement of Judge BUCHER speaking for the court below which held:

> We recognize the concern of the elderly protestants that the peace and quiet of this neighborhood would be somewhat affected. But we cannot find in the record that there will be any substantial effect on the health, welfare and safety of the community. (Citation omitted.)

Accordingly, we will enter the following

### ORDER

Now, March 31, 1977, the Zoning Hearing Board of the City of Lancaster is directed to grant Franklin and Marshall College a special exception upon the amendment of its plan to comply with the side yard requirements of the Lancaster Zoning Ordinance.